# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5150 | **DATE** | 11/24/2003 |
| **CASE TITLE** | DEAHL vs. AIR WISCONSIN AIRLINES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (4-1) to dismiss is granted/denied in part. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 8 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW  courtroom deputy's initials | 03 DEC -2 AM 7:15 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Helen Deahl,

    Plaintiff,

v.

Air Wisconsin Airlines Corp.,

    Defendant.

No. 03 C 5150
Judge James B. Zagel



## MEMORANDUM OPINION AND ORDER

Helen Deahl was a passenger on an Air Wisconsin flight from Fort Wayne, Indiana to Chicago O'Hare. After arrival, she exited the plane down a stairway that was installed in the aircraft door. It had a handrail on the left side for disembarkation but none on the right side. The stairway was unattended by airline personnel on the tarmac. As she walked down, she fell over the right side of the steps onto the tarmac and sustained significant physical injury.

The carrier moves to dismiss on the grounds that state law claims are pre-empted by federal law and that no claim can be made under federal law because the aircraft and its components were certified as safe by the Federal Aviation Administration. The carrier says the Airline Deregulation Act ("ADA") operates to pre-empt state law because it displaces all non-federal law dealing with "rates, routes, and services," which, it argues, includes deplaning procedures.

For the sake of this argument, the carrier must assume that, under state law, negligence could be found by a reasonable trier of fact on one or more of three bases: failure to properly supervise plaintiff's exit, failure to provide an employee at the bottom of the stairs, or failure to



provide a handrail on the right side for deplaning passengers. For purposes of this motion, I assume that there was no handrail on the right side and no one at the bottom of the stairs. (These are probably undisputed facts but I do not know this to be true.) I also assume there was no "proper supervision" of exiting passengers though I guess this would be a disputed fact. Finally, I assume, because plaintiff does not dispute it, that the airplane had an airworthiness certificate as it was an aircraft certified under the appropriate federal regulation, which sets forth equipment requirements for such aircraft.

The safety requirements for stairs on this aircraft (a Dornier 328) say merely that if an integral stair is installed in a door that is also a passenger emergency exit, the stair must be designed not to impair the effectiveness of emergency egress. The door, like any similar door on an aircraft, is considered an emergency exit. Thus, under federal law, the only safety obligation on the carrier is to install a stairway door that will not interfere with emergency exit.

In the abstract, the carrier has a tough argument to make because this logic means that a carrier could install a stairway that would be unsafe for ordinary use and yet not interfere with emergency exit. Because of this difficulty, the plaintiff argues that even if state law is pre-empted, the federal regulation leaves room for a remedy under federal law for stairways that would not interfere with emergency egress but yet are unsafe for reasons other than design specifications, i.e., a broken step. I decline to address this problem because I can resolve the motion without doing so.

The carrier recites the well-known rules on preemption, express and implied. *See* Geier v. American Honda Motor Co., 529 U.S. 861 (2000). The Federal Aviation Act is generally preemptive. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624 (1973). Illinois,

2

among other states, recognizes that uniform national rules governing civil aviation are sound policy. *See* Illinois Aeronautics Act 620 ILCS 5/1 *et. seq*. The Supreme Court has not spoken on preemption with respect to aviation safety under the FAA. Preemption would have to be implied as it is not express.

In the context of this case, there is a strong policy argument for preemption with respect to the allegation that there should be handrails on the right side of the stairway. To allow state law to determine what equipment an airplane should have might mean that a single state would be empowered to dictate equipment for all airplanes throughout the nation because airplanes are designed mostly for purposes of interstate or international travel. Moreover, it is possible that different states may come to inconsistent results on equipment issues.[1] The policy decision is, however, not made by judges. It is made by Congress. Absent express preemption, the courts decide whether or not Congress implied it, as the Supreme Court did in Geier (airbags in automobiles).

In Abdullah v. American Airlines, 181 F.3d 363 (3rd Cir. 1999), the court held that state law claims founded on the failure of a flight crew to give verbal warnings of air turbulence were preempted. Additionally, there is dicta, in the Seventh Circuit, stating tort claims based on inadequate equipment are preempted:

---

[1] An illustrative example is the dispute over whether emergency stop buttons on escalators ought to be easily accessed so that if a person is caught in the moving parts, the machinery can be quickly stopped. The flip side is that an easily accessible stop button allows a stupid or malicious person to stop the moving stairway and cause its passengers to fall and injure themselves. One state could require that stop buttons be covered by a protective shield the way fire alarms are and another could reach the opposite conclusion. *See* Carroll v. Otis Elevator Co., 896 F.2d 210, 212-219 (7th Cir. 1990) (Easterbrook, J., concurring). Escalators do not fly across state lines but the example is still relevant here.

3

> [Plaintiff's] complaint suggests that damages should be awarded because...the aircraft are older models not fitted with high-bypass turbofan engines, or because the planes do not climb at a sufficiently steep rate after takeoff. These subjects are governed by federal law and a state may not use common law procedures to question federal decision or extract money from those who abide by them.

Bieneman v. Chicago, 864 F.2d 463, 471 (7th Cir. 1988).

But, the preemption decisions in the field of aviation are far from uniform[2]. This is so because the Supreme Court has expressly refused to say precisely how far Congress went when it implicitly preempted some significant portion of State authority over aviation within its borders. *See* Morales v. Trans World Airlines, 504 U.S. 374 (1992) (States may not regulate airline fare advertising); American Airlines v. Wolens, 513 U.S. 219 (1995) (States may not apply their consumer fraud statutes to frequent flier programs but state courts could entertain conventional breach of contract claims of a frequent flier). Morales and Wolens reached their conclusions because the practices at issue in those cases seemed clearly to fall within the scope of "rates" as defined in the ADA.

Using the same approach, it is obvious that deplaning falls within the ambit of "services" offered by airlines and is covered by the same preemption provided by the ADA. Since the airline service is to transport a person from one place to another, it is difficult to imagine that getting on and off the plane is not part of the service. Since the Supreme Court permitted state courts to hear contract claims involving fares, the question becomes then would it also permit tort claims involving services?

---

[2] There are lower court precedents which both sides cite, correctly, as adopting holdings that vindicate their positions. This usually means the lower courts are all over the map. This opinion will join the scattered crowd until the Supreme Court tells us all where to stand.

4

Abdullah permitted a tort claim to go forward but applied the federal instead of the state standard of care to the plaintiffs' claims of negligence. Abdullah, 181 F.3d at 373. The Third Circuit decided that the most specific preemption language–the ADA's preclusion of state power over "rates, routes or services" did not preclude lawsuits over injury to passengers. It held:

> Airlines compete against one another by attracting passengers through the rates, routes and services that they offer. Congress did not want the states to hamper this competition by their own regulation of these areas. Safe operations, however, are a necessity for all airlines. Whether or not to conform to safety standards is not an option for airlines in choosing a mode of competition. For this reason, safety of an airline's operations would not appear to fall within the ambit of the ADA and its procompetition preemption clause.

Abdullah, 181 F.3d at 373.

In the cases decided before Abdullah, the Third Circuit noticed, unsurprisingly, that while Congress did not intend to foreclose all state remedies for injuries caused by airline negligence or contract breach, some preemption was required. Id.

Hodges v. Delta Airlines, Inc., 44 F.3d 334 (5th Cir. 1995) permitted a tort claim when one passenger opened an overhead compartment, dislodging a case containing several bottles of rum that fell on and injured another passenger. The opinion reasoned that tort actions arising from the negligent operation or maintenance of the aircraft were not part of the "services" bargained for by the passenger and, therefore, were not preempted by the ADA. It is an open question whether Hodges helps Helen Deahl's case since the Fifth Circuit defined the elements of air carrier service as "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." Id. at 336.

Charas v. TWA, Inc., 160 F.3d 1259 (9th Cir. 1998) permitted a tort claim to go forward but it rejected, wisely in my view, the Hodges distinction between "service" and

5

"operation/maintenance." In <u>Charas</u>, there were three types of tortious incidents: a flight attendant hit a passenger with a service cart, a passenger opened an overhead bin and luggage fell on another passenger's head, and a passenger tripped over a suitcase left in the aisle by another passenger. <u>Charas</u> held that the ADA was intended to keep the States out of economic regulation of the airlines after the federal government had deregulated the industry. This being so, the <u>Charas</u> court said that it made no sense to stop state court tort cases concerning single incidents of injury since they did not interfere with competitive market forces. <u>Id</u>.

In <u>Travel All Over the World v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423 (7th Cir. 1996), the Seventh Circuit followed the <u>Charas</u> approach when it decided that suits for slander and defamation were not preempted. There a travel agent was suing over remarks made to its clients by the defendant, remarks which characterized the travel agency as unreliable and worse. Our Court of Appeals did not have to decide between the Third, Fifth, and Ninth Circuit approaches because the torts in that case clearly fell outside the definition of "services" and were not exempted from state regulation by the ADA. <u>Travel All Over the World</u> is a case that has less to do with preemption than it does with defining the "field" that is preempted. <u>Kohr v. Allegheny Airlines, Inc.</u>, 504 F.2d 400 (7th Cir. 1974) found preemption of state regulation governing mid-air collisions. But, that opinion and its successors have steadfastly refused to address the general question of field preemption. I think that I need, or at least, ought to do so now in order to decide the case before me.

I find Judge Roth's opinion in <u>Abdullah</u> persuasive. I do not repeat the Third Circuit's reasoning here. I adopt it. *See* <u>Abdullah</u>, 181 F.3d at 372-375. The Third Circuit thought the better way to approach the problem was first to recognize that Congress had preempted the field

and then to determine the scope of still available state remedies by carefully defining the field that was preempted. Id. Its solution was to hold that state standards of care are preempted but state remedies are not. Id. For Helen Deahl, this means that she can seek and receive redress for her injured leg only if, in the words of the federal law, the defendant operated an aircraft in a "careless or reckless manner."

Now that I have agreed with Abdullah, as the defendant has urged, the question then becomes why has the defendant made the motion to dismiss?

Since state law remedies are not precluded, the answer lies in defendant's second argument that, in this case, the general federal standard does not govern. Instead, it says that two specific federal rules destroy the plaintiff's case–first, the standard that describes the requirements for stairways installed in doors, which the defendant met and, second, the certification of airworthiness of all the equipment on the aircraft. Under Abdullah, this argument prevails as to one part of the case. It removes from the plaintiff's theory of the case the proposition that the defendant should be held liable for failing to install a side rail on both sides of the staircase. The nature and sufficiency of airplane equipment is for the federal government, not the state courts, to decide.

But, neither the stairway equipment standard nor the airworthiness certification exempt the airlines from careful use of the equipment. Neither standard addresses, in any way, the manner in which equipment is to be used. They are simply not relevant to the facts of this case once the claim of a bad staircase design is taken out. Neither of them diminishes the overall federal law obligation not to operate the aircraft in a careless or reckless manner.

From a tactical point of view, this is no small victory for the defendant. It would be much easier for a trier of fact, using hindsight, to find liability based on the failure to provide a simple (probably inexpensive) side rail. To make the case on the grounds that the airline should have provided a person at the bottom of the staircase is far more difficult since that person might not be able to prevent the injury caused here. While this case, and other airline injury cases, may be made more difficult because federal law usually precludes liability based on the absence of equipment or flaws in equipment design, the cases are neither unwinnable nor precluded by federal law or regulation.

The motion to dismiss the claim that the injury was caused by the failure to include side rails on both sides of the stairway is GRANTED. In all other respects it is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: November 24 2003